RAÚL MARTÍNEZ, Appellant, *v.* REGISTRAR OF PROPERTY
OF MAYAGÜEZ, Respondent.

No. 1275. Submitted March 1, 1951.—Decided March 12, 1952.

204

*José Sabater* for appellant. The Registrar appeared by brief.
*Rafael R. Fuertes, A. Sandín del Manzano, José L. Purcell,*
and *Jacob Bonilla Díaz,* for Planning Board, as *amicus curiae.*

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of
the Court.

By deed No. 136 executed on August 4, 1950 in the city
of Mayagüez before Notary José Sabater, appellant Raúl
Martínez and his wife Olga Ibarra constituted a voluntary
mortgage to secure the payment of a promissory note payable
to bearer on demand in the amount of $10,000 as principal,
with interest at 8 per cent per annum in case of default until
payment in full on a lot of 314.76 square meters [1] which
forms part of another lot of 1120.80 square meters belonging
to appellant and recorded in the Registry of Property of
Mayagüez.

The deed was presented to the Registry and the Registrar
refused to record it because he considered that, to constitute
a mortgage on a portion of the main property, describing said
portion with its own area and boundaries, constituted a sub-

---

[1] The description of the lot is made in the deed as follows:

"Lot facing Santiago Veve Boulevard on which it bounds on the NORTH,
for a length of 12 meters; on the SOUTH it is bounded by a property be-
longing to Mr. Raúl Martínez, which is 15 meters 37 centimeters long;
on the EAST it is 23 meters 24 centimeters long and it is bounded there by
'José Carmelo Martínez' Street; and on the WEST it is 23 meters long
and is bounded by a lot belonging to Infanzón & Rodríguez, nowadays the
Vocational School. It has an area of 314 square meters 76 centimeters."

In the first paragraph of the deed, after the preceding description was
made, the following was set forth:

"Mr. Raúl Martínez, married to his appearing wife, has just built
with his own money a two-story reinforced concrete building, in which only
some details of ornamentation are missing and it will be ready for use
within fifteen days equipped with all the modern comforts."

division, for which no approval of the Planning Board—hereinafter the Board—had been presented.

According to the registry, the lot of 1120.80 square meters was subject to two other mortgages securing payment of two promissory notes to the bearer; one, on the entire lot, for $12,000; the other, for $1,000, on the portion of 314.76 square meters which was the object of the new mortgage sought to be recorded and which has given rise to this appeal.

Appellant argues that by reason of the entry made by the Registrar of the previous mortgage constituted on the portion of 314.76 square meters—pursuant to deed No. 197 executed before Notary José Sabater on October 5, 1949—said lot was recorded "even though included in the entry made of the property" of 1120.80 square meters; and once recorded it remained "under the protection of the courts, which alone may declare the validity or nullity of a record." Appellant cites *Gerena v. Registrar of Humacao*, 26 P.R.R. 79; *Collazo v. Registrar*, 25 P.R.R. 600; *Bolívar et al. v. The Registrar of Property*, 13 P.R.R. 362; and *Roca v. Banco Territorial y Agrícola*, 6 P.R.R. 163. He further contends citing *Mayagüez Sugar Co. v. Registrar*, 40 P.R.R. 77, that this case does not deal with a *segregation* and that he has the right to mortgage his property without the intervention of the Board.

The respondent Registrar, as well as the Board—which appears in this action as *amicus curiae*—argue that, pursuant to Act No. 213 of May 12, 1942, as amended in its § 2 by Act No. 388 of May 11, 1950, the delimitation of and the constitution of a mortgage on the lot of 314.76 square meters, which forms part of the larger lot of 1120.80, constitute a *subdivision*. Let us see.

Section 2 of Act No. 213, *supra*, before its amendment by Act No. 388 already cited, defined the word *subdivision* as follows:

" 'Subdivision' means the division or redivision of a lot, tract,

or parcel of land into two or more parts for sale or for new building and includes urbanization as heretofore used in Puerto Rican legislation."

Under the authority of this provision this Court decided *Enriquez* v. *Registrar*, 65 P.R.R. 383. In this case we held that it is not necessary to make a segregation and to record a parcel which is part of a larger property, as an independent property, for the parcel to be mortgaged, as the delimitation, as set forth in the deed, is sufficient to easily identify the parcel in case of foreclosure. Should there be no foreclosure, the whole property would continue undivided.

Like in *Enriquez* v. *Registrar*, already cited, since no independent property was constituted when appellant on October 5, 1949, mortgaged the portion of 314.76 square meters which formed part of the larger lot, and since the mortgaged deed is not included within the definition of the word "subdivision," pursuant to the Act in force at the time, said mortgage could be recorded as was done by the respondent Registrar.

But legislation varied as we shall now see, subsequent to the registration of the mortgage and since said record by itself did not create an independent parcel, the mortgaged portion continued being a part of the larger property. Consequently, since it had no recordable status of itself, the Registrar was not bound, because of the registration of the former mortgage, to record the mortgage of August 4, 1950, pursuant to the provisions of the statutes in force at this latter date. The cases of *Gerena* v. *Registrar of Humacao, supra; Collazo* v. *Registrar of Caguas, supra; Bolívar et al.* v. *The Registrar of Property, supra;* and *Roca* v. *Banco Territorial y Agrícola, supra,* cited by appellant are not applicable herein.

Let us examine, therefore, the Act in force on August 4, 1950. Section 2 of Act No. 213 of May 12, 1942, as amended

by Act No. 388 of May 11, 1950, defines the word *subdivision* as follows:

" 'Subdivision' means the division or subdivision of a lot, tract, or parcel of land into two or more parts for sale, transfer, cession, lease, donation, usufruct, use, census, trust, as well as for any other transaction, or for a new building; and includes also, housing development as heretofore used in Puerto Rican legislation; and also a simple segregation."[2]

Although the *mortgage*, as may be seen, is not mentioned by its name, in the text copied above, there is no doubt that it is included in the phrase "as for any other transaction," for this general concept is applied, in view of the purpose of the statute, to any act by which a lot, tract, or parcel is to be divided, materially, that is, is to be made into two or more parts from what was formerly a single property. Such is the clear purpose of the Act. If the previous permit of the Board to form a new portion is not sought—in the cases in which the act or transaction carries in itself the immediate formation of an independent property, as well as in the cases in which there is a delimitation without an immediate formation of an independent property—the Act would not meet the end it pursues, and it would be easy to resort to the foreclosure of a mortgage and obtain through that medium what perhaps could not be obtained if attempted in any other way.

For the reasons stated, we must conclude that the respondent Registrar acted correctly in refusing to record the mortgage constituted by deed No. 136 of August 4, 1950 since the previous approval of the Board for the subdivision effected, was not presented.

---

[2] *Mayagüez Sugar Co.* v. *Registrar*, 40 P.R.R. 77, cited by appellant, is not applicable to the instant case in view of the conditions of the present legislation.